# CHARLESTON

## COSBY *v.* HONAKER.

Submitted January 31, 1905.    Decided March 28, 1905.

1. SPECIFIC PERFORMANCE—*Failure to Pay Cash Payment Promptly—Effect.*

    A court of equity will not refuse specific performance of a contract sought to be enforced by the vendee because of delay for a short period in paying a balance due on the cash payment, when the vendor has not by proper steps made time of the essence of the contract and has, through the period of such delay expressed a willingness to receive such balance and complete the contract.   (p. 518.)

2. CONTRACTS FOR REALTY—*Payment of Purchase Money—Time not Ordinarily Essence of.*

    Time is not in courts of equity, considered, ordinarily, of the essence of a contract for the sale of land, and especially as to the payment of purchase money.   Perhaps there may be circumstances, or terms employed such as to take the case out of the general rule. *Abbott* v. *L'Hommedieu*, 10 W. Va. 677.   (p. 518.)

SANDERS, JUDGE, Absent.

Appeal from Circuit Court, Mercer County.

Bill by Mary S. Cosby against James D. Honaker.   Decree for defendant, and plaintiff appeals.

*Reversed.*

W. WALTER McCLAUGHERTY and T. L. HENRITZE, for appellant.

HAROLD A. RITZ, for appellee.

McWHORTER, JUDGE:

On the 25th day of January, 1902, the following paper was made and delivered to Mary S. Cosby: "Received of Mrs. Mary S. Cosby this 25th day of January, 1902, the sum of one hundred and fifty (150) dollars being part of cash payment on property at corner of Raleigh St. and Stewart Ave. this day sold to Mary S. Cosby as of February 1st, 1902, and for which property I am to make proper deed, etc., the said sale being at the price of four thousand dollars." At the July rules, 1902, Mary S. Cosby filed her bill of complaint in the circuit court of Mercer county against J. D. Honaker, to compel specific performance of the said contract, and for general relief. Plaintiff filed with her bill a copy of said receipt for $150.00 alleging that the balance of the cash payment was $150.00, to be paid when the deed was made and delivered, as of February 1, 1902, and alleged that there was a further memorandum in writing made at the same time which contained a more definite description of the property, which was retained by Honaker, and alleging that the balance of the purchase money, the sum of $3,700.00 was to be paid in seven equal annual payments from the first day of February, 1902, with interest from said date on the respective payments; that the defendant was to make a deed to the plaintiff and the plaintiff was to execute notes for the balance of said $3,700.00 payable as stated and to be secured by a deed of trust on the property, to be executed by the plaintiff, the plaintiff to keep the property insured during the life of said trust deed in an amount sufficient to cover whatever amount might be owing and unpaid, with a mortgage clause attached to the policy for the benefit of the defendant; that on or about the first day of February, 1902, Honaker's agent, J. D. Honaker, Jr., was in the city of Bluefield and came to plaintiff about the delivery of the deed, and that plaintiff pay the said $150.00 balance of cash payment and execute the notes and trust deed; that she advised said agent that she was not ready to pay the cash payment, but would be by the end of the month; that about the last of February plaintiff and said agent had a conversation in regard to fixing up the matter and the agent agreed to let the matter lie over until about the last of March upon the consideration that the defendant was to get the rent from said property for the month ending

about the last of March, and that in consideration thereof the matter was delayed; that about the last of March the agent was at Bluefield and the closing was again postponed, and it went over from time to time principally by reason of the failure of defendant to call upon plaintiff as he agreed and promised to do; that plaintiff informed the agent, Honaker, that she had not the money in the house but had it in the bank and was anxious to close the deal; that on May 1, 1902, Honaker, the agent, promised to call at plaintiff's home the next day between 9 and 10 o'clock A. M. and close the matter up, which he failed to do; that on the 3d day of May plaintiff again saw the agent and requested that it be closed up that day when he for the first time informed plaintiff that the defendant had determined not to consummate the matter but to return to plaintiff her money already paid, and interest; that defendant Honaker had collected and received to his own use the rents for said property for the months ending the latter part of April, the latter part of May and the latter part of June, at the rate of $67.00 per month, which rents were rightfully going to plaintiff, but which rents aggregating $201.00 had been received by the defendant and used by him, and that he would continue to collect the rents, and apply the same to his own use unless the court make an order estopping him from doing so, and praying that the court make such order and compel the defendant to return to the plaintiff the sum so wrongfully received by him for said rents, together with proper interest on same, and that he be held to account to her for rents thereafter to be collected; that plaintiff was at the time agreed between her and the agent of the defendant for the contract to be completed, able, willing and greatly desirous of completing said contract, and had ever since been, and was then able, willing and anxious and desirous to perform the contract on her part, and then offered to pay the balance of said cash payment, including the interest thereon from Februrry 1, 1902, (the day it was to be paid) to the day of payment, and to execute her notes for the balance of the purchase money as provided by their contract, and to execute the trust deed to secure the same, and to procure the fire insurance upon the property as required, and praying that the defendant be compelled to specifically perform his part of the contract, and upon his failure to make a deed to the plaintiff

that the court appoint a commissioner with power, and directed to make such deed in the room and stead of the defendant.

The defendant filed his demurrer and answer to said bill, admitted that he did contract to sell to plaintiff the property mentioned, and that the consideration as expressed in said bill was correct, that he did receive the $150.00, but that in addition to the consideration expressed in the bill plaintiff was to pay him the premium on certain insured premises held on said property, and that said stipulations and agreements on the part of plaintiff were to be performed on or before the first day of February, 1902, and averred that he was ready and willing on said first day of February to perform his part of the contract, and that he had prior to said time executed a proper and sufficient deed to plaintiff for said property and tendered the same to plaintiff upon the compliance by her of her part of the contract for the purchase of said property, and that plaintiff then and there failed and refused to comply with the said contract upon her part; and filed with his answer a deed dated January 28, 1902, and acknowledged by respondent and his wife, Belle Honaker, on the 29th day of January, 1902, conveying the said property to the plaintiff with covenants of general warranty; denied that any extension of time was made by him or his agent as alleged in the bill, and that even until the third day of May he repeatedly insisted upon plaintiff closing her contract, but; she failed and refused so to do, and that on said third day of May, the plaintiff was informed that no longer time could be given for the consummation of the deal; that on the 5th day of May, 1902, respondent by his agent, notified plaintiff that he could no longer continue said arrangement, and on the 5th day of May, said defendant, by his authorized agent, renounced said contract and arrangement for the purchase of said property because of extraordinary delay of the plaintiff and tendered to plaintiff the money already paid by her, together with legal interest thereon and which he then tendered in open court in satisfaction of any demand said plaintiff might have against him; denied that there was any other written agreement or memorandum in writing entered into between himself and the plaintiff on the 25th day of January, 1902; admitted that he

had collected the rents; but denied that plaintiff was entitled to any interest therein as claimed in her bill.

Depositions were taken and filed in the cause by both plaintiff and defendant and the cause was heard on the 12th day of August, 1903, upon the bill and exhibits, the answer of defendant and exhibits filed therewith, and general replication, and upon the depositions, upon consideration of all which the court was of opinion and so decreed that the plaintiff, was not entitled to the relief prayed for in her bill and decreed the dismissal of the bill with costs to the defendant. The defendant then again made tender of the $152.50 theretofore paid by him into court, as shown by the record, to plaintiff, and asked plaintiff if she would receive the same back which she in open court refused and declined to do, when the court granted leave to the defendant to receive back from the clerk the said money and the clerk was directed to pay back the same to the said defendant or his attorney, which was done in open court. From which decree the plaintiff appealed to this Court and says that the court erred in decreeing that the defendant had a right to a rescission of the contract, and that plaintiff was not entitled to the relief sought for in her bill.

Plaintiff was not put in possession of the property purchased and time was not made specifically of the essence of the contract. The receipt for the part of the cash payment was on the 25th of January, and the residue of the cash payment of $150.00 was to be paid on the first day of February following, when the contract of sale was to be consummated by the delivery of the deed to the purchaser and the execution of the notes for the deferred payments and the deed of of trust on the property conveyed, to secure the same. It appears from the record that either on the last day of January or the first day of February, the defendant was prepared to execute his part of the contract and tendered the deed, but plaintiff was not ready to pay the residue of the cash payment or to make the notes and execute the deed of trust. Plaintiff appointed another time, about the last of February, in which the defendant acquiesced, when the transaction should be consummated; plaintiff again failed, and asked further time. J. D. Honaker, Jr., the agent who seems to have had almost entire control of the matter says that about the 19th or 20th of March he wrote to Mrs. Cosby that he

would be in Bluefield on the 26th day of March and while there he would see her and "She must have the money to close the deal; that it must be closed at that time." He states that he went to see the plaintiff on the 28th day of March when she again said she had not the money, but if he would stay until the next day she would try to borrow it. He told her that he had to go home that afternoon, but he would return the first of the week and if she got the money to notify him and he would return on Monday or Tuesday; she said she hated to run him back so much; that he had already made several trips and that if she got the money she would go to Rocky Gap, his home; he told her she need not do that, just notify him and he would come; that on Monday or Tuesday he received a letter from plaintiff saying that she had failed to get the money; then he and his father talked about the matter and decided that the better plan would be to return her the money she had already paid and not be baffled any longer; that he never went to see her any more after that until the third day of May when she told him she had the money and wanted to pay him and close the matter up, he told her that they would pay back the $150.00 with its interest that she had paid, and he got the money and tendered the same to her through Mr. Postlethwaite on Monday morning, the fifth of May. The testimony of plaintiff is not materially different from that of the agent, Honaker, except that she details more meetings with him and promises on his part to come to her house and close up the deal when he frequently failed to appear as promised. Mary C. Cosby, the daughter of plaintiff, testified that on the first day of May she and her mother saw Honaker, Jr., passing the street by their residence and she, at the instance of her mother, went and accosted him on the street and informed him that her mother: "Was ready and wanted to close the deal at once," and asked him when he could come to close the deal with her mother; "He said any time that was convenient with her and at what time should he come; I told Mr. Honaker that my mother had said that she would like to close the deal that afternoon or the next morning; he said he could not come that afternoon, but that he would come the next morning, between the hours of 9 and 10, to close the deal."

Appellee contends that while the receipt filed as the written

contract did not make time of the essence of the contract, yet it was made so by the action of the defendant in fixing a time within which payment must be made, and cites *Frink* v. *Thomas*, 12 L. R. A. 239 (Ore.) where it is held: "Although there is no stipulation in the contract that time shall be essential, nor anything in the nature or circumstances of the agreement to make it so, it can nevertheless be made so by a performance or tender of performance by one party and a demand of the other." He further cites from 3d Pom. Eq. Juris., section 1408, note on page 2173, where it is said: "Time may also be made essential, where one of the parties delays in fulfilling, and the other party by a notice prescribes a period within which the contract must be completed, or else be abandoned." The authorities here cited are not such as will help the defendant in his case, because the only time that he gave notice to the plaintiff that the deal must be closed within a specified time was when he notified her that it must be done on the 26th of March, when defendant would be in Bluefield, but his notice did not indicate that unless she complied with her part of the contract it must be abandoned; but, on the contrary, he called upon her two days after the time fixed in his notice, on the 28th, according to his own testimony, then waiving the benefit of it by giving the plaintiff still further time in which to comply with her contract, and when he finally attempted to rescind the contract by making a tender of the money and its interest which she had paid on account of the contract it was without any notice to the plaintiff whatever, that he was proposing to rescind. "Where the time of performance is fixed by the contract, the question is whether it is of the essence of the contract or not, and this is a question of construction." 9 Cyc. 604. "Time is not of the essence of a contract to convey land at a future day, unless the language of the contract clearly indicates that it was so intended by the parties." *Knott* v. *Stephens*, 5 Ore. 235. In *Abbott* v. *L'Hommedieu*, 10 W. Va. 677 (syl. pt. 7), it is held: "Time is not in courts of equity, considered, ordinarily, of the essence of a contract for the sale of land, and especially as to the payment of purchase money. Perhaps there may be circumstances or terms employed such as to take the case out of the general rule." In section 393, Pom. Con. it is said, that the vendor if he intends to avail himself of the pro-

vision for avoiding the contract "Must give the purchaser a timely and reasonable notice of his intention to avoid the contract or must do some unequivocal act which unmistakably shows that intention, for the vendor can not treat the default alone as terminating the agreement." This applies, of course, in a case where time is not made of the essence of the contract by the terms of the contract itself.

In case at bar the acts of the defendant up to the 1st of May were entirely consistent with a purpose to continue the contract—the first intimation the plaintiff had of defendant's intention to avoid it was on the 3d day of May when Honaker, the agent, told plaintiff that his father had concluded not to close the deal and his purpose to return her the money she had paid. On the first day of May, as testified by the daughter of plaintiff, Mary C. Cosby, Honaker had agreed to go to plaintiff's house on the morning of May 2, and close up the matter. Honaker stated in his testimony afterwards that Miss Mary C. Cosby told him on Thursday (May 1,) that her mother wanted him to come up "I believe she said to close the deal, I told her I would go up the next day, in the forenoon, but didn't go until Saturday, and I think it was in the forenoon that I went." And it was then he gave plaintiff the information that defendant had concluded not to complete the contract. The only time any notice was given that the money must be paid by a specified time was on the 26th of March, but even then there was no intimation of any intention to rescind or cancel the contract by the defendant upon failure to pay at that time, and if the notice had contained such provision the right to enforce it was waived by granting further time in which to pay the money. The defendant, with his answer filed the deed executed by him and tendered to the plaintiff on the last day of January or the first day of February, 1902, in pursuance of the written receipt, which deed contains sufficient description of the property sold to enable the court to enforce specifically, the contract in this case. In *Bowles* v. *Woodson*, 6 Grat. 78, (syl. pt. 1), it is held: "A vendor of land prepares a deed and signs it, which described the land, and states the amount and times of payment of the purchase money. This deed is never delivered, but is retained and preserved by the vendor. Upon a bill by the vendee for a specific performance of the contract, *Held*:

The deed is a sufficient memorandum in writing of the contract, to satisfy the requirement of the statute of frauds and perjuries."

.For the reasons herein given the court erred in refusing to decree specific performance of the contract. The decree come plained of is therefore reversed and annulled and the caus-remanded to the circuit court of Mercer county for further proceedings to be had therein in conformity with the principles herein contained and the rules governing courts of equity.

*Reversed.*