## Wytheville.

### C. C. HAMILTON v. J. J. NEWBOLD.

June 12, 1930.

Absent, Prentis, C. J., and Epes, J.

The opinion states the case.

*Q. C. Davis, Jr.*, for the appellant.

*J. Toomer Garrow*, for the appellee.

GREGORY, J., delivered the opinion of the court.

J. J. Newbold instituted a suit against C. C. Hamilton asking for the specific performance of a certain oral agreement for the purchase of two lots in the city of Hopewell for $450.00. The testimony established that the purchase price was to be paid as follows: $25.00 cash and $25.00 per month. When the $25.00 cash pay-

ment was made in April, 1923, Newbold, being a man of small means and having bought the place for a home, was placed in possession, and has remained in possession from that time until the present, and during his possession he has from time to time made certain improvements amounting in all to approximately $200.00. The monthly payments were made until October, 1925, at which time they aggregated $200.00. After that time and until February, 1927, Newbold was in default in his payments. In February, 1927, he notified appellant that he was ready to pay all of the residue of the purchase money and directed Hamilton to send the deed to the bank at Hopewell, and upon its receipt by the bank he would pay the bank the balance due and receive the deed conveying the title to him. In response to the notice the appellant wrote Newbold from Baltimore on February 23, 1927, "I learn * * * that you are ready and prepared to make a complete settlement for houses in Hopewell. I am delighted to hear such good news as I have wished for a settlement for some time * * * let me suggest that you take a trip up to Baltimore for a day and let's get everything straightened up as I am very anxious myself to close the deal * * * so will advise you to take a trip up here and make settlement." Newbold declined to go to Baltimore to make the settlement, but insisted that the deed be sent to the Hopewell Bank as he had previously directed. On March 15, 1927, nearly a month later, Hamilton wrote Newbold that "if you wish to purchase this property you may do so between now and the first of April, 1927, for the sum of $1,200.00." He also informed Newbold that if he did not want the property at $1,200.00 that he, Newbold, should surrender possession. The testimony of Broyhill, a real estate agent, discloses that this property greatly enhanced in value since Newbold bought it, on account of certain municipal improvements having been

made, such as installing water and light systems, constructing streets, erecting a street car line in close proximity and the location of a new plant. He placed the value of the property in 1927, if in good repair, at $2,000.

Newbold filed his bill alleging substantially the facts above narrated, and asked that the oral contract which had been partly performed be specifically enforced.

Hamilton filed a plea of the statute of limitation and demurred to the bill, claiming that the contract sought to be enforced was uncertain and indefinite, that Newbold had been guilty of laches, and that he had not alleged performance on his part. The court rejected the plea and overruled the demurrer, and Hamilton then filed his answer admitting the oral agreement and that Newbold had taken possession of the property under the agreement. He denied that Newbold had made the repairs claimed. He admitted the payments made by Newbold on the purchase price amounting to $200.00 and that the purchase price was to be paid monthly. There are other averments in the answer but it is unnecessary to deal with them.

The Corporation Court of Hopewell entered the decree here complained of, directing Hamilton to convey the proprety to Newbold, and Newbold was directed to deposit with the clerk $250.00, the residue of the purchase money which was to be later turned over to Hamilton.

It is contended by the appellant, Hamilton:

First: That the contract should not be enforced because it was not in writing, and further that it was too indefinite and uncertain in terms.

Second: That Newbold was guilty of laches and inexcusable delay in bringing his suit, and in the meantime circumstances and conditions have changed and now to require specific performance would result in hardship.

Third: That Newbold being in default in his payments for several months he is not now in position to seek the aid of a court of equity.

■■ Of course a parol contract for the sale of land must be definite and certain, before it can be enforced by a court of equity. The agreement under review is entirely certain, definite and clear in its terms. The purchase price was definitely fixed at $450.00, to be paid monthly at the rate of $25.00 per month. The description of the property is set forth so clearly that there can be no question about it.

■ If a parol agreement is certain and definite in its terms and the acts proved in part performance refer to, result from or be made in pursuance of the parol agreement proved, and if the agreement is so far executed that refusal of full execution would operate a fraud upon the party, it may always be enforced. In this case Newbold has paid nearly half of the purchase price; has been in open possession of the property under this agreement has made moderate repairs to the property since he has had possession; and has been using the property as a home.

In the case of *Floyd* v. *Harding*, 28 Gratt. (69 Va.) 401, this court held: "Courts of equity treat such contracts where there is part performance as valid and effectual as those evidenced by the most solemn instruments of writing. In order to prevent the possibility of fraud in engrafting this exception upon the statute of frauds, it is settled that the parol agreement relied on must be certain and definite in its terms; the acts proved in part performance must refer to, result from or be done in pursuance of the agreement; and the agreement must have been so far executed that a refusal of full execution will operate as a fraud upon the party and place him in a situation which does not lie in compensation. *Wright* v. *Puckett*, 22 Gratt. (63

Va.) 370." This statement of the law in Virginia is clear and has been consistently applied without change down to the present time.

■■ The contention that Newbold was guilty of laches and delay in bringing this suit does not apply. The laches or delay, in order to be effectual as a bar to the party bringing a specific performance suit, must be accompanied with circumstances and facts showing an intention on his part to abandon the contract. It must be unreasonable and injurious to the other party. The application of laches is quite different in a case where the purchaser has been placed in possession of the property and has paid a portion of the purchase price.

In the case of *Lowther Oil Co. v. Miller-Sibley Oil Co.*, 53 W. Va. 501, 44 S. E. 433, 436, 97 Am. St. Rep. 1027, it was held that "when one is in possession we can almost say time is no matter, but when he is not it is far different."

In 25 Ruling Case Law, page 253, it is said that "on the other hand laches cannot be imputed to one in the peaceable possession of land for delay in resorting to a court of equity, since the possession is notice to all of the possessor's equitable rights and he needs to assert them only when he may find occasion to do so."

The cases relied on by the appellant are not in point, and as an illustration we may take the case of *Darling* v. *Cummings' Ex'or*, 92 Va. 521, 23 S. E. 880. In that case Darling agreed (not in writing) to buy a tract of land from Cumming. A contract was drawn but never signed by either party. A year later Cumming died, leaving a will in which he expressed a desire that the tract be sold to Darling in accordance with the understanding. Darling was at no time in possession and paid no part of the purchase price. The understanding was had on May 10, 1888, and this suit was brought in

1891, two years after Cumming died, and in the meantime the value of the land had increased from $27.50 per acre to $150.00 per acre. Under such circumstances the court held that the delay in bringing the suit was unreasonable and constituted sufficient ground for denying relief. It is not difficult to distinguish that case from the case under consideration. We have here a much shorter delay and the vendee has paid nearly half of the purchase price; has been in open possession of the land since 1923, and has made substantial improvements on the property.

The other cases cited by the appellant are not in point and it is needless to discuss them.

The case of *East* v. *Atkinson*, 117 Va. 490, 85 S. E. 468, 469, is nearer the case under consideration than any case we have been able to find. The essential facts of the case are: That the vendee bought ninety-eight acres of land under an oral contract and he gave the vendor a bond for the purchase price payable at the rate of $100.00 per annum. He was placed in possession and occupied the premises as a home. He made improvements and dealt generally with the property as his own. He failed to pay the annual instalments promptly, but later tendered the full purchase price and requested a conveyance, but the vendor refused to accept the purchase price and declined to convey the property. He brought a suit for specific performance of the oral agreement, and this court held: "The contract was entirely certain, definite and clear in its terms; Atkinson was in possession when the contract was made and continued in exclusive possession until this suit was brought; this possession was admittedly held under the contract made with Mrs. Yeatts; the improvements were not costly or extensive, worth at most not over $300.00, but they were directly referable to and in pur-

suance of the contract, and, viewed in the light of the value of the land, the plaintiff's means and station in life, and the fact that he was trying to convert the property into a permanent home, they were of substantial and peculiar value.

"The case on behalf of the appellee, as it appears in the record before us, meets all the requirements of the rule established in Virginia for compelling the specific execution of a partly performed verbal contract for the sale of land.

"From the numerous decisions on the subject the following principles may be extracted and briefly stated as follows: 1st. The parol agreement relied on must be certain and definite in its terms. 2nd. The acts prove part performance must refer to, result from or be made in pursuance of the agreement proved. 3rd. The agreement must have been so far executed that a refusal of full execution would operate a fraud upon the party and place him in a situation which does not lie in compensation. Where these three things concur a court of equity will decree specific execution. *Wright* v. *Puckett*, 22 Gratt. (63 Va.) 374. See also, *Lester* v. *Lester*, 28 Gratt. (69 Va.) 737; *Henley* v. *Cottrell Real Estate Co.*, 101 Va. 70-73, 43 S. E. 191; *Plunkett* v. *Bryant*, 101 Va. 814-818, 45 S. E. 742; *Reed* v. *Reed*, 108 Va. 794, 62 S. E. 792.

"The fact that Atkinson had not paid the instalments of purchase money as they became due does not, under the other facts of this case, constitute a valid defense to the bill. The plain terms of the contract and the conduct and dealings of the parties preclude any claim that time was of the essence of the contract."

The letter of the appellant to Newbold on February 22, 1927, shows conclusively that at that time the appellant recognized the contract and appreciated the

forthcoming settlement. He said nothing from which it could possibly be inferred that he did not intend to carry out the agreement, but on the other hand everything in this letter indicates that he treated the contract as still in force and that he at that time intended to carry it out. This letter, to say the least, constituted a waiver of Newbold's default in the payment of the purchase price.

On March 15, 1927, some three weeks after the letter of February 22nd, appellant notified Newbold that he would not carry out the contract and practically claims that it is forfeited.

When a vendee, who has been in default in the payment of the purchase price, is and has been in possession from the inception of the contract, offers to pay the entire residue of the purchase price, and calls for his deed, and the vendor, who up to that time has treated the contract as still in force, refuses to accept the purchase price and refuses to deliver the deed, then the vendor is in default and the vendee may maintain a suit against him for the performance of the contract. Under such circumstances the vendor will be treated as having waived the default of the vendee.

In the case under consideration time was not made of the essence of the contract. Equity does not treat time as of the essence of a contract to convey land at a future day, unless the language of the contract clearly indicates that it was so intended by the parties, and even if it had been intended in this case the appellant waived it because he treated the contract as still in force after Newbold had offered to pay the balance. He further permitted Newbold to remain in possession unmolested the whole time. This circumstance, coupled with the letter of February 22nd, shows conclusively that Hamilton waived any default which Newbold may have been guilty of.

"A court of equity will not refuse specific performance of a contract sought to be enforced by the vendee because of delay for a short period in paying a balance due on the cash payment, when the vendor has not by proper steps made time of the essence of the contract and has, through the period of such delay, expressed a willingness to receive such balance and complete the contract." *Cosby* v. *Honaker*, 57 W. Va. 512, 50 S. E. 610.

The decree is affirmed.

*Affirmed.*