COURT OF APPEALS OF VIRGINIA

Present: Judges Malveaux, White and Senior Judge Annunziata
Argued at Fairfax, Virginia


JON F. MAINS, TRUSTEE/EXECUTOR FOR THE
 TRUST/ESTATE OF L. RANDOLPH WILLIAMS
                                                MEMORANDUM OPINION[*] BY
v.      Record No. 1991-24-4                    JUDGE ROSEMARIE ANNUNZIATA
                                                NOVEMBER 18, 2025
JOHN BIRGE


FROM THE CIRCUIT COURT OF FAIRFAX COUNTY
Patrick M. Blanch, Judge

Jon F. Mains (Jon F. Mains & Associates, LLC, on briefs), *pro se*.

Erik B. Lawson (Glenn H. Silver; Silver & Brown, P.C., on briefs),
 for appellee.


Jon F. Mains, Trustee/Executor for the Trust/Estate of L. Randolph Williams appeals the

circuit court's judgment granting John Birge's petition for partition of a certain parcel of real

property located in McLean, Virginia. Finding no error, we affirm.

BACKGROUND

In 1988, Williams purchased the property and then sold half to Birge. Williams signed a

back-dated 1988 deed transferring a half-interest. Since the purchase, Williams leased the

property to tenants. The property is a townhouse in a subdivision zoned for single-family

townhouse lots, and the parties both concede that the property cannot be physically divided.

---

[*] This opinion is not designated for publication. *See* Code § 17.1-413(A).

In 1991, the parties signed an agreement[1] stating that Birge had paid Williams "a sum equal to one-half of the closing costs and other expenses of purchase" and that Birge had continued to pay one-half of the expenses associated with owning the property. The parties agreed that the deed would not be recorded "for the time being" to avoid triggering the "Due on Sale Clause" in the deed of trust. The agreement provided that when "the market improves and if we agree, the property shall be sold and the net proceeds of the sale shall be split 50/50." Further, if one party did not want to sell, he could buy out the other.

In 1994, Birge requested that Williams purchase Birge's property interest because he could no longer afford to contribute to the property's expenses.[2] Williams declined the offer, and Birge stopped contributing to ongoing property expenses in the end of 1995. By that time, Birge had invested about $148,000 in the property. When Birge stopped paying toward expenses, Williams claimed that Birge lost his property interest. After that, Williams did not share the rental income, which was cash-flow positive for at least four years.

In 2004, Birge sued Williams (first action) primarily to determine whether Birge maintained an interest in the property. Although Birge initially sued on six counts,[3] some of which he unsuccessfully moved to nonsuit,[4] he proceeded to trial only on two. At trial, Birge presented argument and evidence only for declaratory judgment and an accounting. Birge

---

[1] The circuit court held that the agreement was unenforceable because "one of the parties to it is dead, and it doesn't say anything about successors in interest."

[2] Prior to 1995, Birge worked for Randoph Williams, Inc., which Williams owned. During his employment, Birge would assist with any problems at the property. Birge later quit.

[3] The original six counts were: Count I (partnership, accounting, dissolution winding up of the partnership business), Count II (joint venture accounting, dissolution winding up of the partnership business), Count III (common law accounting), Count IV (partition), Count V (constructive trust), and Count VI (declaratory judgment).

[4] Birge moved to nonsuit his partition claim and other claims, but a pending counterclaim prevented the nonsuit.

abandoned his partition claim because at the time of trial in the first action, multiple liens burdened the property and minimized equity.

After a two-day trial in the first action, the circuit court held that Birge and Williams each owned 50% of the property as tenants in common. The court's order, recorded in a deed book, held that Birge was a 50% owner "by virtue of an unrecorded deed dated November 28, 1988" from Williams to Birge. The order provided that, subject to the rulings in the first action, "Birge is entitled to the rights of a 50% owner upon the sale or disposition" of the property. The order also granted motions to strike Count I (partnership, accounting, dissolution winding up of the partnership business), Count II (joint venture accounting, dissolution winding up of the partnership business), Count III (common law accounting), Count IV (partition), and Count V (constructive trust).[5] The Supreme Court of Virginia denied Williams's petition for appeal of the first action.

In 2020, Birge sued Williams,[6] Amtrust, Robert E. Campbell, and John Doe, seeking to partition the property.[7] Birge requested sale of the property, or that one party buy out the other's property interest "upon appropriate terms." In response, Williams asserted a plea in bar based on res judicata, laches, statute of limitations, collateral estoppel, and law of the case. Williams argued that the rulings in the first action blocked Birge's claims. Despite his plea in bar, Williams agreed that the parties held the property as tenants in common. In opposing the plea in bar, Birge argued that his partition suit had not been ripe in the first action because he had not

---

[5] The 2007 order granted in part and denied in part Count VI (declaratory judgment), and it granted Birge's motion to strike Williams's counterclaim seeking declaratory judgment.

[6] Williams passed away in November 2023.

[7] Amtrust was the holder of the deed of trust, and Campbell was the trustee of the deed of trust. John Doe was the unknown tenant residing at the property.

pursued that claim. Birge claimed that as a tenant in common, he remained entitled to seek partition.

After an evidentiary hearing, the circuit court denied Williams's plea in bar. The circuit court found that the first action dismissed Count IV (partition) "as being essentially abandoned" because Birge presented no evidence on his partition claim. Considering that Birge had abandoned his partition claim, res judicata did not apply and Birge retained statutory rights as a tenant in common to seek partition under Code § 8.01-81. The circuit court reasoned that if a 50% owner could not seek partition, an "impermissible restraint on alienation" would result.

After the denial of his plea in bar, Williams asserted affirmative defenses and moved for leave to amend his answer to request allotment; Williams did not counterclaim.[8] In seeking allotment, Williams wanted the allotment price to be reduced by an amount equal to the property expenses that Birge allegedly promised to pay but stopped paying in 1995. Despite his initial request for allotment, however, Mains was unwilling to accept allotment of the property's $975,000 fair market value at trial.

Prior to trial, the parties stipulated that no accounting would be presented at trial, and a pretrial order documented the stipulation. Despite the stipulation, shortly before trial, Mains emailed Birge that he planned to introduce evidence of paying more than his share of expenses. The morning of trial, Birge presented a bench brief arguing that Mains could not present evidence of an unpleaded claim for accounting. Birge argued that an accounting was different from allotment; an accounting was a separate cause of action that required separate pleading. Mains argued that he was entitled to overpayment of expenses and objected to Birge raising bench-brief arguments on the morning of trial.

_____

[8] The amended answer identified affirmative defenses including res judicata, collateral estoppel, law of the case, unlawful collateral attach of prior judgment, estoppel, unclean hands, laches, antecedent breach, abandonment, and waiver.

After conducting a two-day trial on the merits, the circuit court granted partition. The circuit court explained that Code § 8.01-81 authorized tenants in common to compel partition. Partition in kind was not possible and neither party would accept allotment, so the circuit court declined to allot the property. The circuit court found that partition best served both parties' interests. The circuit court ordered sale of the property by a licensed realtor for not less than $975,000, which the parties agreed was the fair market value. And the circuit court held that Mains was not entitled to an accounting or contribution because he had not pleaded those affirmative claims.

The circuit court rejected Mains's defenses to partition. First, the court held that laches did not apply because the delay in filing the partition claim was not unreasonable or inexcusable. The property had been burdened with liens during the first action, so partition would have yielded nothing until removal of those liens. Second, the court held that unclean hands did not apply for the reasons stated in *Bajgain v. Bajgain*, 64 Va. App. 439 (2015)—namely that this was a statutory proceeding in equity, and the partition statute dictated the considerations, without mentioning equitable defenses like unclean hands. In any case, the circuit court found inadequate proof of unclean hands. Third, the circuit court rejected the defenses of res judicata and collateral estoppel for the reasons it overruled the plea in bar. Fourth, the circuit court held that the law of the case doctrine had "no binding effect on the trial court prior to appeal." Finally, the circuit court rejected Mains's unpleaded claim that partition should be offset by contribution or accounting because Mains had not requested such compensation in his pleadings.

On appeal, Mains asserts seven assignments of error, primarily arguing that the petition for partition should not have been granted due to res judicata, collateral estoppel, law of the case, collateral attack on a prior judgment, laches, unclean hands, abandonment, estoppel, waiver, and antecedent breach. Mains further argues that the circuit court erred by not crediting Mains for

expenses Williams paid to preserve the property after Birge stopped paying expenses. Lastly, Mains argues that the circuit court erred by considering Birge's bench brief but declining to admit into evidence certain exhibits that Mains proffered after the trial time had expired.

Birge moved to dismiss the appeal for lack of jurisdiction, contending that the circuit court had not entered a final order or certified its order for interlocutory appeal. This Court ordered supplemental briefing and heard oral argument on whether it would have jurisdiction to hear the appeal under Code § 17.1-405(A)(5).[9] Birge argued primarily that Code § 17.1-405(A)(5) did not confer jurisdiction because partition is statutory, not equitable. Mains argued that jurisdiction was proper under both Code § 17.1-405(A)(5) and § 17.1-405(A)(3) because the order compelled partition and it was final.[10]

## ANALYSIS

We review a trial court's decision to partition real estate for an abuse of discretion. *De Benveniste v. Aaron Christensen Fam.*, *LP*, 278 Va. 317, 326 (2009) (citing *Butler v. Hayes*, 254 Va. 38, 44 (1997)). We review questions of law de novo. *Alcoy v. Valley Nursing Homes*, *Inc.*, 272 Va. 37 (2006). Fact findings are binding unless plainly wrong or without evidentiary support. *Orgain v. Butler*, 255 Va. 129, 132-33 (1998). "When judges sit as factfinders, 'no less than jurors,' we give their determinations 'the highest degree of appellate deference.'" *Moncrieffe v. Deno*, 76 Va. App. 488, 496 (2023) (quoting *Palmer v. R.A. Yancey Lumber Corp.*, 294 Va. 140, 158 (2017)). We likewise view the evidence and all reasonable inferences drawn from it in the light most favorable to the prevailing party at trial. *Id.*

---

[9] With certain exceptions, Code § 17.1-405(A)(5) authorizes an aggrieved party to appeal from: "any interlocutory decree or order involving an equitable claim in which the decree or order (i) requires money to be paid or the possession or title of property to be changed or (ii) adjudicates the principles of a cause."

[10] Code § 17.1-405(A)(3) authorizes appeals from "any final judgment, order, or decree of a circuit court in a civil matter" except as provided in § 17.1-406(B).

*I. Jurisdiction over this appeal is proper.*

With certain inapplicable exceptions, Code § 17.1-405(A)(5) authorizes an aggrieved party to appeal from: "any interlocutory decree or order involving an equitable claim in which the decree or order (i) requires money to be paid or the possession or title of property to be changed or (ii) adjudicates the principles of a cause."

Here, although the Fairfax Circuit Court did not identify its November 20, 2024 order as a final order, the order is, at a minimum, an order on an equitable claim requiring the title of property to be changed. The Supreme Court of Virginia has held that partition is a "subject over which courts of equity have for more than a century assumed almost exclusive jurisdiction." *Grove v. Grove*, 100 Va. 556, 559 (1902). And Code § 8.01-81(A) provides: "Any court having general equity jurisdiction has jurisdiction in cases of partition . . . ." Although statutes address the mechanics of partition, partition remains within the general province of equity. *See id.*; *see also Leonard v. Boswell*, 197 Va. 713, 719 (1956) (holding that in partition suits, "a court of equity, acting under authority conferred by statute," acts upon its general jurisdiction); *Price v. Simpson*, 182 Va. 530, 535 (1944) (involving partition and holding that in "the exercise of its equity jurisdiction, a court of chancery is empowered . . . to take cognizance of all questions of law affecting the legal title" and "may sell the whole and divide the proceeds"). We find that the circuit court's order involved an equitable claim and required title to be changed, so jurisdiction is proper under Code § 17.1-405(A)(5). Accordingly, we deny Birge's motion to dismiss.

*II. The circuit court properly granted the petition for partition.*

Tenants in common "shall be compellable to make partition and may compel partition," and any "court having general equity jurisdiction has jurisdiction in cases of partition." Code § 8.01-81. In partition suits, "the court is given broad authority to deal with the subject as the interest of the parties and the circumstances of the case may require." *Stamps v. Williamson*, 190

- 7 -

Va. 145, 152 (1949). But before "a court is authorized to allot or sell an undivided interest in a partition action, it shall first determine that partition in kind cannot be practicably made." Code § 8.01-83.

When the property is not subject to practicable division in kind:

> the court shall next consider an *allotment* of the entire subject property to any one or more of the parties *who will accept it for a price equal to the value* determined pursuant to § 8.01-81.1, *and pay therefor to the other parties* such sums of money as their interest therein may entitle them to receive . . . .

*Id.* (emphases added).[11] The "allotment provision is permissive and its exercise rests in the sound discretion of the court." *Thrasher v. Thrasher*, 202 Va. 594, 604 (1961). If allotment "is not practicable or is not equitable," courts next consider sale. Code § 8.01-83.

Partition by sale requires satisfaction of two statutory prerequisites: "determining that partition in kind *cannot* be conveniently made," and then "determining that sale will be in the best interest of all the parties." *Sensabaugh v. Sensabaugh*, 232 Va. 250, 256 (1986); *see also Shannon v. Hall*, 235 Va. 360, 364 (1988) (same). The proponent of sale has the burden "to prove all the prerequisites to sale," and proof of such prerequisites "must affirmatively appear in the record." *Sensabaugh*, 232 Va. at 257. Proving prerequisites to sale depends "not merely on the allegations in the pleadings, but on the evidence or lack of evidence adduced to support such allegations." *Stamps*, 190 Va. at 153.

Here, the circuit court did not err in finding satisfaction of the prerequisites to partition. First, the parties conceded that partition in kind was not possible. The record supports that partition in kind was not possible because the property was a residential townhouse. Second, the record supports the circuit court's finding that the sale was in the parties' best interest. Sale

---

[11] Code § 8.01-81.1 provides that with certain exceptions such as party agreement on the method of property valuation, "the court in every partition action shall order an appraisal . . . , and such appraisal shall inform the court's determination of fair market value."

would end years of protracted litigation over the property, and both parties could recoup some of their investment. In addition, sale was the only practical way to divide interests given that neither party was willing to accept allotment at trial. Considering that allotment was not practical, the circuit court correctly ordered sale under Code § 8.01-83.1.

Mains's argument that res judicata blocked partition is unavailing.[12] Res judicata requires proof of four elements: "identity of the remedies sought, identity of the cause of action, identity of the parties, and identity of the quality of the persons for or against whom the claim is made." *Gunter v. Martin*, 281 Va. 642, 645 (2011) (quoting *State Water Control Bd. v. Smithfield Foods, Inc.*, 261 Va. 209, 214 (2001)). Here, Birge attempted to nonsuit and later abandoned his partition claim before trial in the first action; Birge introduced no evidence or argument in support of partition.[13] The first action "dismissed Count 4 [partition] as being essentially abandoned" without any evidence presented. Thus, the identities of the remedies sought and pursued causes of action were different in the first action. And because Birge was a deeded 50% property owner, he maintained ownership rights to seek statutory partition rights under Code § 8.01-81. *See Dillard v. Jefferies*, 118 Va. 81, 88 (1915) (holding that where plaintiff and defendant were still tenants in common of the land in question, complainant had the right to maintain suit for partition). Otherwise, alienation of Birge's property interest would be

---

[12] The law-of-the-case doctrine does not apply because the first action did not determine whether Birge could *ever* seek partition in subsequent litigation. *See, e.g.*, *Miller-Jenkins v. Miller-Jenkins*, 276 Va. 19, 26 (2008) (holding that when a party fails to challenge *a decision rendered* by a court at one stage of litigation, that party waives her right to challenge that decision during later stages of the *same litigation*). Rather, the court in the first action granted a motion to strike the partition claim because Birge had abandoned it; it did not preclude future partition.

[13] Birge attempted to nonsuit his partition claim, but a pending counterclaim prevented the nonsuit.

impermissibly restricted. *See Hamm v. Hazelwood*, 292 Va. 153, 159 (2016) (noting that conditions prohibiting alienation of a vested fee simple estate are generally void).

Mains's argument that laches barred partition also is unconvincing. "Laches is a defense against equitable claims where the plaintiff fails 'to assert a known right or claim for an unexplained period of time under circumstances prejudicial to the adverse party.'" *May v. R.A. Yancey Lumber Corp.*, 297 Va. 1, 18 (2019) (quoting *Stewart v. Lady*, 251 Va. 106, 114 (1996)). For laches to apply, the delay must be "unreasonable and injurious to the other party." *Hamilton v. Newbold*, 154 Va. 345, 351 (1930). And generally, "laches does not apply to a suit for the partition of land" brought by a holder of the legal title. *Camp Mfg. Co. v. Green*, 129 Va. 360, 367 (1921). Here, laches does not apply because Birge was within his rights as a tenant in common to bring a partition suit. *Id.* In addition, Birge's delay in seeking partition was reasonable, given that liens burdened the property during the first action.[14]

Mains's other equitable defenses also either fail or do not apply. First, the circuit court did not err in finding no unclean hands, as Birge operated within his rights as a tenant in common and had attempted to sell his interest to Williams. In addition, the statutory paradigm does not identify a defense of unclean hands. *See Bajgain*, 64 Va. App. at 458 (noting that statutory limitations "differentiate those cases from ordinary suits in equity"). Second, there was no unlawful collateral attack on a prior judgment; the first action focused on property ownership rights—not partition. Third, although Birge abandoned his partition claim in the first action, he did not lose his deeded property right to statutory partition. *See Baker v. Morris's Adm'r*, 37 Va. 284, 310 (1839) (holding that "legal rights are never lost by abandonment, though equitable

---

[14] Contrary to Mains's argument, the circuit court in the first action did not reach the issue of whether laches applied to the partition claim. Birge had abandoned the partition claim in the first action, so to the extent the circuit court referenced laches in the first action, it referred to the remainder of Count VI (declaratory judgment).

rights may be"). Fourth, antecedent breach is a contractual argument, but the dispute here involves statutory partition—not breach of contract.[15] *See Denton v. Browntown Valley Assocs.*, 294 Va. 76, 88 (2017) (holding that under the first breach doctrine, the "first party to materially breach a contract cannot enforce it"). Fifth, estoppel fails because the first action did not adjudicate the partition claim, and Williams did not prove the elements of estoppel. *See Dominick v. Vassar*, 235 Va. 295, 298 (1988) (identifying elements of equitable estoppel to be a representation, reliance, change of position, and detriment). Sixth, there is no showing that Birge waived his deeded ownership rights recognized in the first action. Waiver requires intentional relinquishment of a known right, and there is no showing that Birge intended to relinquish his partition rights. *See Stanley's Cafeteria, Inc. v. Abramson*, 226 Va. 68, 74 (1983) (holding that waiver requires both knowledge of the facts underlying the right and the intent to relinquish the right).

> *III. Mains did not plead for an accounting or contribution and would not accept allotment, so the circuit court did not err in declining to award Mains's alleged overpayment of expenses.*

Code § 8.01-83 provides that when division in kind is not practicable, the court will "consider an allotment of the entire subject property to any one or more of the parties *who will accept it for a price equal to the value determined pursuant to § 8.01-81.1, and pay therefor to the other parties such sums of money as their interest therein may entitle them to receive*." (Emphasis added). Here, the parties agreed that division in kind was not practicable, and neither party was willing to accept allotment for $975,000—the price equal to the value determined in § 8.01-81.1, which required either an appraisal or another agreed method of valuation. As neither party was willing to accept allotment for $975,000, Code § 8.01-83(B)(2)'s provisions relating to

---

[15] We note that Birge attempted to comply with the agreement by asking Williams to buy his property interest before he stopped paying expenses, and Williams did not buyout Birge's interest.

considerations for allotment are inapplicable. *See* Code § 8.01-83(B)(2) (identifying considerations when multiple parties seek allotment, including the degree to which the parties have contributed to the property). And where allotment is not practicable, Code § 8.01-83 requires the circuit court to "order a sale" under Code § 8.01-83.1.

Although Mains requested payment for unpaid expenses at trial, he did not counterclaim or seek the affirmative relief of an accounting or contribution.[16] To have pleaded a claim for accounting, Mains generally needed to plead that his cotenant received more than his "just share."[17] Code § 8.01-31; *Riverside Healthcare Ass'n v. Forbes*, 281 Va. 522, 534 (2011) (holding that the circuit court erred in considering the Trustee's accounting because it was not within the pleadings). Not only did Mains not plead for an accounting, Mains stipulated that he would not present an accounting at trial. And to request compensation for improvements, Mains needed to plead for contribution or offer testimony treating any permanent improvements as calling for compensation— neither of which occurred. *See Lehmann v. WFV Holdings, LLC*, 80 Va. App. 802, 813 (2024) (identifying pleading requirement for compensation for improvements unless testimony treated permanent improvements as calling for compensation). Given that Mains did not plead for recovery of unpaid expenses and would not accept allotment—which would have provided for certain statutory considerations under Code § 8.01-83(B)(2),[18] the circuit court did not err in ordering

---

[16] Mains argues that he presented testimony on contribution, but the circuit court found that Mains had not.

[17] Mains argued that he could not have pleaded for an accounting prior to sale because Birge would not have received more than his just share until after sale. But Mains did not otherwise plead for affirmative relief regarding expense payments, offer testimony on permanent improvements, or accept an allotment.

[18] When multiple parties seek allotment, considerations under Code § 8.01-83(B)(2)(d) include the "degree to which the parties have contributed their pro rata share of the property taxes, insurance, and other expenses associated with maintaining ownership of the property or have contributed to the physical improvement, maintenance, or upkeep of the property."

statutory sale without granting affirmative relief to Mains. *See Lehmann*, 80 Va. App. at 813 (holding that if "a tenant desires compensation for enhancement, he must request it in his pleadings"); *Grayson v. Westwood Bldgs. L.P.*, 300 Va. 25, 69 (2021) (holding that the basis of every right of recovery under our system of jurisprudence is a pleading setting forth facts warranting the granting of the relief sought).

> *IV.  The circuit court did not abuse its discretion in declining to admit certain of Mains's evidence.*

We review decisions about the admissibility of evidence for abuse of discretion. *Blankenship v. Commonwealth*, 69 Va. App. 692, 697 (2019).  We afford a high level of deference to a trial court's decision on evidentiary matters.  *Thomas v. Commonwealth*, 44 Va. App. 741, 753, *adopted upon reh'g en banc*, 45 Va. App. 811 (2005); *see also de Haan v. de Haan*, 54 Va. App. 428, 446 (2009) (holding that trial courts have significant latitude in managing their dockets).  The "time allowed counsel for argument is within the sound discretion of the court, the exercise of which will not be interfered with by an appellate court in the absence of a clear showing of prejudice to the substantial rights of the complaining party."  *Brown v. Peters*, 202 Va. 382, 391 (1961).

Mains contends that Birge's bench-brief arguments on the morning of trial exceeded the scheduling order's permissible time limits and denied Mains sufficient trial time.  Birge countered that the arguments were appropriate to refute Mains's last-minute change in positions, from not seeking an accounting to pursuing recovery of unpaid expenses.  Shortly before trial, Mains emailed Birge that he would seek overpayment of property expenses.[19]

Mains's position that he lacked sufficient trial time due to Birge's argument on the bench brief is not convincing.  First, the circuit court kept track of each party's time, and Mains used

---

[19] Mains contended that he could seek unpaid expenses without asserting a claim for accounting.

"substantially more time" overall than Birge. On the second day of trial, the circuit court warned that so far Williams had "used 123 minutes" and Birge had "used 101." Thus, despite Birge's presentment of the bench-brief arguments, Mains still dominated time use. Mains also spent more than an hour arguing his own motion. In sum, the circuit court provided a fair opportunity to be heard and an adequate warning of the limited time available, and Mains struggled to budget his time efficiently.

Second, the circuit court did not abuse its discretion in declining to admit Mains's proffered evidence because such evidence either was untimely, would have been inadmissible, or would not have impacted the granting of partition. After the conclusion of trial, Mains proffered introduction of interrogatory responses without stating what their contents would be,[20] and Mains read into the record Williams's 2005 deposition transcript. Even if the exhibits had been introduced earlier and could have withstood relevance and hearsay objections—which we do not decide—they would not have impacted Birge's statutory right as a tenant in common to seek partition. We find that the circuit court did not abuse its discretion in disallowing the exhibits. *See Blankenship*, 69 Va. App. at 697 (holding that decisions on the admissibility of evidence will not be disturbed absent an abuse of discretion).

## CONCLUSION

Finding that the circuit court did not abuse its discretion in granting partition, the circuit court's judgment is affirmed.

*Affirmed.*

---

[20] An adequate proffer creates a record of "what the [evidence] would have been." *Commonwealth Transp. Comm'r v. Target Corp.*, 274 Va. 341, 348 (2007) (quoting *Holles v. Sunrise Terrace, Inc.*, 257 Va. 131, 135 (1999)).